1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   MONICA LILIANA ROBLES-              No. 1:25-cv-02001-KES-SAB (HC)
    RODRIGUEZ,
10
                    Petitioner,          ORDER GRANTING MOTION FOR
11                                        PRELIMINARY INJUNCTION
          v.
12                                        Doc. 2
    TODD LYONS, Acting Director,
13  Immigration and Customs Enforcement;
    BRIAN ACUNA, Acting Field Office
14  Director of Enforcement and Removal
    Operations, New Orleans Field Office;
15  SERGIO ALBARRAN, Field Office
    Director of Enforcement and Removal
16  Operations, San Francisco Field Office, U.S.
    Immigration and Customs Enforcement;
17  KRISTI NOEM, Secretary, U.S. Department
    of Homeland Security; U.S.
18  DEPARTMENT OF HOMELAND
    SECURITY; PAMELA BONDI, Attorney
19  General of the United States; EXECUTIVE
    OFFICE FOR IMMIGRATION REVIEW;
20  CHRISTOPHER CHESTNUT, Warden,
    California City Detention Facility,
21
                    Respondents.
22

23
           This habeas action concerns the re-detention of petitioner Monica Liliana Robles-
24
    Rodriguez, a noncitizen who was detained and released in 2022 but recently re-detained. This
25
    matter is before the Court on petitioner's motion for temporary restraining order. Doc. 2. For the
26
    reasons explained below, the motion for temporary restraining order, which the Court converts to
27
    a motion for preliminary injunction, is granted.
28

                                          1

1    **I.    Background**

2        Petitioner entered the United States without inspection on September 21, 2022.  Doc. 8-1,

3    Guzman Decl. at ¶ 6.  Immigration authorities arrested and detained her that day.  *See id.* ¶¶ 6, 7.

4    They prepared a Form I-860, Notice and Order of Expedited Removal, which contains two

5    sections: the first section is titled "Determination of Inadmissibility," and the second section is

6    titled "Order of Removal Under Section 235(b)(1) of the Act."  Doc. 1-2 at 2.  While the

7    "Determination of Inadmissibility" section is completed and signed by an immigration officer,

8    there are no entries at in the "Order of Removal" section.  *Id.*  The purported "Order of Removal"

9    does not have the immigration officer's name or signature, it does not have the supervisor's name

10    or signature, a box for indicating if supervisory concurrence was obtained by telephone is blank,

11    and the certificate of service is not signed or dated by the immigration officer.  In short, the

12    purported order of removal is blank and uncompleted, and it does not reflect that an immigration

13    officer served it on petitioner or anyone else.  The only remaining entry on the document is a

14    stamp entry, "Refused to Sign," in the acknowledgment section.

15        On September 28, 2022, immigration authorities released petitioner on humanitarian

16    parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and scheduled her to appear for a credible fear

17    interview with United States Citizenship and Immigration Services ("USCIS").  Doc. 1 at ¶ 28;

18    Doc. 1-2 at 4; Doc. 8-1, Guzman Decl. at ¶ 8.  Immigration officials may parole a noncitizen

19    pursuant to 8 U.S.C. § 1182(d)(5)(A) "for 'urgent humanitarian reasons' or 'significant public

20    benefit,' provided the [noncitizen] present[s] neither a security risk nor risk of absconding."

21    8 C.F.R. § 212.5(b) (quoting 8 U.S.C. § 1182(d)(5)(A)).  Such "[r]elease reflects a determination

22    by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia*

23    *v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v.*

24    *Sessions*, 905 F.3d 1137 (9th Cir. 2018).

25        Following her release, Immigration and Customs Enforcement ("ICE") enrolled petitioner

26    in a monitoring program, and they required her to regularly check in with them through a mobile

27    phone application, among other things.  Doc. 1 at ¶ 29.  Respondents do not dispute petitioner's

28    assertion that she complied with all conditions of that program.  *See id.*; Doc. 8.  Petitioner is

2

1    married to a United States citizen. Doc. 1 at ¶ 32. On November 10, 2022, USCIS found that

2    petitioner did not have a credible fear of persecution or torture if she were returned to her home

3    country. Doc. 8-1, Guzman Decl. at ¶ 9. USCIS referred the case to an immigration judge for

4    review of that determination. *Id.* Petitioner asserts that she never received notice of the hearing

5    before the immigration judge. Doc. 1 at ¶ 30; *see* Doc. 8-1, Guzman Decl. at ¶ 10. The

6    immigration judge affirmed USCIS's negative credible fear determination. Doc. 1-2 at 6.

7        Petitioner thereafter continued to seek relief from removal. On August 24, 2023, she filed

8    an application for asylum and withholding of removal. Doc. 8-1, Guzman Decl. at ¶ 11. On

9    July 24, 2025, her husband filed an I-130 petition on her behalf so that she could seek to adjust

10   her status to that of a lawful permanent resident. Doc. 1 at ¶ 32.

11       On October 30, 2025, petitioner appeared for a scheduled check-in at the San Jose ICE

12   office, and when she arrived, ICE arrested her. Doc. 1 at ¶ 31. Respondents assert that they did

13   so to "execute her final removal order." Doc. 8-1, Guzman Decl. at ¶ 13. Petitioner filed a

14   "Motion To Rescind In Absentia Removal Order And Reopen Credible Fear Review

15   Proceedings" with the immigration court, which automatically stayed petitioner's scheduled

16   removal. *Id.* ¶ 15. The immigration judge denied that motion on December 3, 2025. Doc. 8-2,

17   Ex. 3. Respondents state in their briefing that they are "again preparing [petitioner] for removal."

18   Doc. 8 at 11.

19       On December 24, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

20   motion for temporary restraining order, Doc. 2, arguing that her re-detention without a pre-

21   deprivation bond hearing violates the Due Process Clause. Respondents filed an opposition,

22   Doc. 8, and petitioner filed a reply, Docs. 9, 10.[1]

23   **II.    Conversion to a Motion for Preliminary Injunction**

24       The Court directed respondents to state their position on whether the motion for temporary

25   restraining order should be converted to a motion for preliminary injunction and whether they

26   requested a hearing on the motion. Doc. 5. While respondents object to the issuance of a

27   _____

28   [1] Petitioner filed her reply twice. Docs. 9, 10. The filings appears to be identical.

1  temporary restraining order or a preliminary injunction, they request that the Court treat their

2  opposition as their response to both motions, as well as to the underlying habeas petition.  Doc. 8

3  at 2.  Given that the standards for issuing a temporary restraining order and a preliminary

4  injunction are substantially the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.*, 240

5  F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in

6  opposition, see Doc. 8, petitioner's motion is converted to a motion for preliminary injunction.

7      **III.    Legal Standard**

8      "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

9  *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–

10  90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to

11  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

12  relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

13  *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

14  531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of

15  success on the merits is a threshold inquiry and is the most important factor."  *Simon v. City &*

16  *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

17  *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious

18  questions going to the merits—a lesser showing than likelihood of success on the merits—then a

19  preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

20  favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767

21  F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

22      **IV.    Discussion**

23          **a.  Whether Petitioner Has Been Ordered Removed**

24      While petitioner's challenges only her detention in this action, the Court must first

25  determine whether petitioner has in fact been ordered removed, given the relevance of that issue

26  to whether petitioner can show a likelihood of success on her detention claims.[2]  As noted above,

27

28  [2] The Court has jurisdiction to determine, as a factual matter, whether petitioner has been ordered removed.  *See* 8 U.S.C. § 1252(e)(2)(B) ("Judicial review of any determination made under

4

the second section of the Form I-860 Notice and Order of Expedited Removal, which is titled "Order of Removal Under Section 235(b)(1) of the Act," is entirely blank and unsigned, Doc. 1-2 at 2, and petitioner argues that it is defective and legally void. *See* Doc. 1 at ¶ 2. While the uncompleted order of removal form includes printed language stating that "[b]ased upon the determination set forth above" (i.e., in the "Determination of Inadmissibility"), "you are found to be inadmissible as charged and ordered removed from the United States," the order of removal section itself is entirely uncompleted. Doc. 1-2 at 2.

The Court ordered respondents to "file a copy of the signed order of removal to the extent such document exists." Doc. 14. Despite being given the opportunity to present such evidence, respondents have failed to provide a signed and executed order of removal for petitioner. Instead, they take the position that the entirely blank "Order of Removal" on the Form I-860 is an "executable final removal order," Doc. 15, Gilbert Decl. at ¶¶ 5–8, even though it is not signed by the immigration officer as required, it is not signed by a supervisor and does not reflect supervisor concurrence as required, and the certificate of service section is likewise blank and unsigned, *see* Doc. 15–1 at 1. The declaration of supervisory detention and deportation officer Gilbert states that "that the general observed process of U.S. Customs and Border Protection is to fill out the top portion of the Form I-860, which evidences that the alien is in the expedited removal process." *Id.* ¶ 5. "The bottom portion of the Form I-860 would not be filled out and signed until the expedited removal order is executed." *Id.*

Respondents apparent position that the blank and uncompleted order of removal section constitutes a valid final order of removal is inconsistent with the applicable regulation and the order of removal form itself. *See* 8 C.F.R. § 235.3(b)(7); Doc. 15-1. As the blank and unsigned order of removal is not entered by an immigration officer or approved by a supervisor, it is not a final removal order under section 235.3(b)(7). Section 235.3(b)(7) provides that "*[a]ny* removal order entered by an examining immigration officer pursuant to section 235(b)(1) of the Act must

---

section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of . . . whether the petitioner was ordered removed under such section[,]" among other things.).

1   be reviewed and approved by the appropriate supervisor *before* the order is considered final."

2   8 C.F.R. § 235.3(b)(7) (emphasis added).  Here, the form contains areas for the immigration

3   officer's name and signature and for the supervisor's name and signature, but all those areas are

4   empty.  *Id.*  There is box to check if supervisory concurrence was obtained by telephone or other

5   means because no supervisor was on duty, but that box is also empty.  *Id.*  And as noted, the

6   certificate of service section is also entirely uncompleted.  *Id.*

7          Additionally, petitioner is not now subject to expedited removal, because she was paroled

8   into the United States in 2022.  Section 1225(b)(1), the expedited removal provision, applies to

9   "an alien . . . who is arriving in the United States or . . . [a]n alien . . . who has not been admitted

10  or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an

11  immigration officer, that the alien has been physically present in the United States continuously

12  for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8

13  U.S.C. § 1225(b)(1)(A)(i), (iii)(II).

14         As someone who has been physically present in the United States for over two years,

15  petitioner is not "an alien . . . who is arriving in the United States."  *See Al Otro Lado v. Wolf*, 952

16  F.3d 999, 1012 (9th Cir. 2020) (explaining that a "person standing at the border is . . . [at] the

17  penultimate stage in the process of arriving in the United States" within the meaning of section

18  1225).  And because petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), she is not an

19  "alien . . . who has not been admitted or paroled . . . ."  *Id.*  The Court agrees with other courts

20  which have found that a noncitizen who has been paroled into the United States cannot later be

21  subject to expedited removal, even if their parole has expired or been terminated.  *See Coal. for*

22  *Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *21–27 (D.D.C.

23  Aug. 1, 2025); *N.Y.V.D. v. Santracruz*, No. 5:25-CV-03404-WLH-SP, 2025 WL 3786964, at *3

24  (C.D. Cal. Dec. 23, 2025); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at

25  *4–5 (N.D. Cal. Sept. 5, 2025).

26         In sum, respondents have failed to identify a valid final order of removal for petitioner and

27  petitioner is not subject to expedited removal.

28

1      **b.  Likelihood of Success on the Merits**

2          Petitioner argues that the Due Process Clause bars the government from re-detaining her

3   without first providing a hearing where it must prove she is a flight risk or danger.  Doc. 2 at 12–

4   22.  In response, respondents argue that petitioner has no due process rights because she is subject

5   to the "entry fiction" doctrine.  Doc. 8 at 5–10.

6          The Supreme Court has noted the distinction "between those aliens who have come to our

7   shores seeking admission . . . and those who are within the United States after an entry,

8   irrespective of its legality."  *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958).  "In the latter

9   instance, the Court has recognized additional rights and privileges not extended to those in the

10  former category who are merely 'on the threshold of initial entry.'"  *Id.*  "[O]nce an alien enters

11  the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons'

12  within the United States, including aliens, whether their presence here is lawful, unlawful,

13  temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  But those at the

14  threshold of initial entry typically have only those rights provided by statute.  *See U.S. ex rel.*

15  *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

16         The "entry fiction" extends this distinction "to some individuals within the United States

17  but who, as a result of their status, are deemed technically to be outside."  *Xi v. I.N.S.*, 298 F.3d

18  832, 837 (9th Cir. 2002).  For example, "[w]hen an alien arrives at a port of entry—[such as] an

19  international airport—the alien is on U. S. soil, but the alien is not considered to have entered the

20  country for the purposes of this rule."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,

21  139 (2020).  The entry fiction limits a noncitizen in such circumstances to "only those rights

22  *regarding admission* that Congress has provided by statute."  *Id.* at 140 (emphasis added); *see*

23  *also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (addressing the

24  distinction between a challenge to admission and a challenge to detention and holding that

25  *Thuraissigiam* does not foreclose a challenge to detention).

26         Respondents argue that *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en

27  banc), *superseded by statute as stated in Xi*, 298 F.3d at 837–38, precludes petitioner's challenge

28  to her immigration detention.  In *Barrera-Echavarria*, the petitioner was a Cuban national who

7

1    was detained at a port of entry. *Id.* at 1143–44. After the petitioner was ordered excluded, he was

2    paroled into the country pursuant to 8 U.S.C. § 1182(d)(5)(A) as he could not be deported to

3    Cuba, but he was subsequently re-detained after he committed various crimes while on parole.

4    *Id.* at 1443–44. The Ninth Circuit found that the former 8 U.S.C. § 1226(e), which has since been

5    repealed, statutorily authorized the indefinite detention of a noncitizen who had been ordered

6    excluded but whose deportation could not be effectuated. *Id.* at 1444–48 (citing 8 U.S.C.

7    § 1226(e) (repealed 1996)). The petitioner argued that "his detention in federal prisons almost

8    continuously since 1985 [fell] on the punishment side of the line and violate[d] his [substantive]

9    right to due process." *Id.* at 1448. The Court rejected that claim, finding that "[b]ecause

10   excludable aliens are deemed under the entry doctrine not to be present on United States territory,

11   a holding that they have no substantive right to be free from immigration detention reasonably

12   follows." *Id.* at 1450.

13           Respondents argue that the entry fiction also applies to petitioner and that *Barrera-*

14   *Echavarria* forecloses her due process claim for release from detention. But as the Ninth Circuit

15   noted in *Xi*, "the statute interpreted in *Barrera-Echavarria* no longer exists," and subsequent

16   amendments to the immigration laws "introduced an entire set of legal concepts purporting to

17   redefine the 'basic territorial distinction' at play in immigration law." *Xi*, 298 F.3d at 838

18   (quoting *Zadvydas*, 533 U.S. at 694). *Barrera-Echavarria* considered the Attorney General's

19   statutory authority "to detain undeportable, excludable aliens." *Barrera-Echavarria*, 44 F.3d at

20   1444. But "'excludable' is no longer a term that has any statutory import under the INA." *Xi*,

21   298 F.3d at 838.[3]

22           Other district courts in this circuit that have found that a noncitizen like petitioner, who

23   was paroled into the United States, has a due process right to challenge her re-detention without a

24   _____

25   [3] In *Zadvydas v. Davis*, the Supreme Court, noting the "serious constitutional problem" that
     would be presented if a statute permitted "indefinite detention of an alien[,]" employed the
26   constitutional avoidance canon in holding that 8 U.S.C. § 1231(a)(6) "limits an alien's post-
     removal-period detention" to a reasonable period and "does not permit indefinite detention."
27   *Zadvydas v. Davis*, 533 U.S. 678, 689–90 (2001). In *Xi*, the Ninth Circuit found that this
     interpretation of § 1231(a)(6) also applied to inadmissible aliens. *Xi*, 298 F.3d at 836–39.

28

1   bond hearing.  *See, e.g.*, *Aviles-Mena v. Kaiser,* No. 25-CV-06783-RFL, 2025 WL 2578215, at *4

2   (N.D. Cal. Sept. 5, 2025); *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL

3   2637663 (W.D. Wash. Sept. 12, 2025); *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025

4   WL 3063251 (W.D. Wash. Nov. 3, 2025*)*; *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK,

5   2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding *Barrera-Echavarria* inapposite to a

6   noncitizen who had been detained at the border and paroled pending removal proceedings); *see*

7   *also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b)

8   and related statutes that "[a]rbitrary civil detention is not a feature of our American government,"

9   and expressing "grave doubts that any statute that allows for arbitrary prolonged detention

10  without any process is constitutional").[4]  The Court similarly finds that petitioner has a due

11  process right to challenge her re-detention pending her removal proceedings.

12      Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists

13  a protected liberty interest under the Due Process Clause, and the second examines the procedures

14  necessary to ensure any deprivation of that protected liberty interest accords with the

15  Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D.

16  Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460

17  (1989)).

18                          **i.  Petitioner Possesses a Protected Liberty Interest.**

19      A protected liberty interest may arise from a conditional release from physical restraint.

20  *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to

21  arrest and detain an individual, a protected liberty interest under the Due Process Clause may

22  entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process

23  requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)

24  _____

25  [4] Similarly, in a due process challenge to the prolonged detention of a § 1225(b) detainee, the
    United States District Court for the Southern District of California rejected the argument that

26  *Barrera-Echavarria* and the entry fiction foreclosed the petitioner's due process claim.  *Kydyrali
    v. Wolf*, 499 F. Supp. 3d 768, 770 (S.D. Cal. 2020); *see also Ramirez v. Sessions*, No. 18-CV-

27  05188-SVK, 2019 WL 11005487, at *6 (N.D. Cal. Jan. 30, 2019) (concluding that *Barrera-
    Echavarria* did not foreclose a noncitizen's due process challenge to mandatory detention under 8

28  U.S.C. § 1225(b)).

9

1 (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole

2 context). To determine whether a specific conditional release rises to the level of a protected

3 liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in

4 the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-*

5 *Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation

6 omitted).

7        In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide

8 range of things open to persons" who have never been in custody or convicted of any crime,

9 including to live at home, work, and "be with family and friends and to form the other enduring

10 attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly

11 subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring

12 and seeking authorization to work and travel, her "condition is very different from that of

13 confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole

14 will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of

15 parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore,

16 a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84.

17        Petitioner's humanitarian parole was similar. For three years, it allowed her to establish

18 ties in the community and live with her U.S. citizen husband while applying for relief from

19 removal. These actions were made possible by petitioner's freedom, which is "the most

20 elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). The Court finds

21 that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, 791

22 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (recognizing that "the liberty interest that arises upon

23 release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*,

24 No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases

25 finding that noncitizens who have been released have a strong liberty interest). The Court must

26 therefore determine what process is due before the government may terminate her liberty.

27 ///

28 ///

### ii. *Mathews* Factors

Due process "is a flexible concept that varies with the particular situation." *Zinerman v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required here may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).[5]

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for three years and, during that time, lived with her U.S. citizen husband and established ties in the community while applying for relief from removal. Her detention denies her that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Respondents concede that petitioner is not a danger or a flight

---

[5] Respondents argue that the *Mathews* factors do not apply because the Supreme Court has not utilized those factors in evaluating a Due Process claim by a noncitizen. Doc. 8 at 10 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). But courts in this circuit routinely employ the *Mathews* factors to evaluate the due process argument that petitioner makes here. *See e.g., Ramirez Clavijo v. Kaiser*, No. 25-CV06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem*, No. 25-CV05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). And "*Mathews* remains a flexible test," *Rodriguez Diaz*, 53 F.4th at 1206–07, that appropriately accounts for the competing interests of an individual detainee and the government.

1   risk.  Doc. 8 at 11 ("Even if Petitioner specifically does not appear to be a danger or flight risk,

2   the Government has a strong interest in effectuating the system Congress devised." (internal

3   quotation marks omitted)).  Given this concession, the risk of erroneous deprivation is significant.

4          Third, although the government has a strong interest in enforcing the immigration laws,

5   the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*,

6   415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025

7   WL 691664, at *6 (E.D. Cal. March 3, 2025).  In immigration court, custody hearings are routine

8   and impose a "minimal" cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-

9   arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in

10  doing so without a hearing is low."  *Ortega*, 415 F. Supp. 3d at 970.

11         On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing.  At

12  such a hearing, the government must prove that she is a flight risk or danger to the community by

13  clear and convincing evidence.  *See Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL

14  2935630, at *13–14 (N.D. Cal. Oct. 15, 2025); *Duong v. Kaiser*, No. 25-CV-07598-JST, 2025

15  WL 2689266, at *8 (N.D. Cal. Sept. 19, 2025); *see also Addington v. Texas*, 441 U.S. 418, 425–

16  33 (1979) (holding that clear and convincing evidence standard was appropriate standard of proof

17  for civil commitment proceedings for the mentally ill).  And that hearing should have occurred

18  before petitioner was re-detained.  "'[T]he root requirement' of the Due Process Clause" is "'that

19  an individual be given an opportunity for a hearing *before* he is deprived of any significant

20  protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting

21  *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the

22  *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing

23  *before* the State deprives a person of liberty . . . .").  Courts typically require evidence of urgent

24  concerns or an especially strong government interest to justify a post-deprivation hearing.  *See

25  Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025); *United States v. James

26  Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the

27  general rule requiring predeprivation notice and hearing, but only in extraordinary situations

28  where some valid governmental interest is at stake that justifies postponing the hearing until after

1   the event[,]" such as "executive urgency." (internal quotations omitted)).  Given the absence of

2   "evidence of urgent concerns," the Court concludes that "a *pre*-deprivation hearing is required to

3   satisfy due process."  *Guillermo M. R.*, 791 F. Supp. 3d at 1036.

4       With these considerations in mind, petitioner is likely to succeed on the merits of her

5   claim that her re-detention without a pre-deprivation bond hearing violates due process.[6]

6           **c.  Irreparable Harm**

7       Turning to the second *Winter* factor, "[i]t is well established that the deprivation of

8   constitutional rights 'unquestionably constitutes irreparable injury."  *Hernandez*, 872 F.3d at 994

9   (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged

10  deprivation of a constitutional right is involved, most courts hold that no further showing of

11  irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)

12  (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Given

13  the Court's conclusion that petitioner is likely to succeed on the merits of her claim that her

14  detention without a bond hearing violates the Due Process Clause, petitioner faces irreparable

15  harm absent a preliminary injunction.

16          **d.  Balance of Equities and Public Interest**

17      When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird*

18  *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the

19  government has a strong interest in enforcing the immigration laws, the issue in this case is not

20  whether the government can detain petitioner at all, but whether it can detain petitioner without a

21  bond hearing.  Faced with a choice "between [this minimally costly procedure] and preventable

22  human suffering," the Court concludes "that the balance of hardships tips decidedly in

23  [petitioner's] favor."  *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432,

24  1437 (9th Cir. 1983)).

25      The public interest also weighs in petitioner's favor.  "The public has a strong interest in

26  upholding procedural protections against unlawful detention, and the Ninth Circuit has

27

_____

28  [6] The Court need not address petitioner's other claims as petitioner is entitled to the relief she
    seeks based on the ruling on her due process claim.

1    recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL

2    1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)

3    (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,

4    838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's

5    constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

6              **e.  Remedy**

7              In conclusion, the Court finds that the requirements for issuing a preliminary injunction

8    are met.  Petitioner's immediate release is required to return her to the status quo ante—"the last

9    uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3;

10   *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10,

11   2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025)

12   (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-

13   11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*,

14   No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1  **V.  Conclusion and Order**

2       Accordingly:

3       1.  Petitioner's motion for a preliminary injunction, Doc. 2, is GRANTED.

4       2.  Respondents are ORDERED to release petitioner immediately.

5       3.  Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless

6            they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing

7            before a neutral decisionmaker, that petitioner is a flight risk or danger to the

8            community such that her physical custody is legally justified.

9       4.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

10           regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008,

11           1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at

12           *4.

13      5.  This matter is referred to the assigned magistrate judge for further proceedings

14           including the preparation of findings and recommendations on the petition or other

15           appropriate action.

16

17

18  IT IS SO ORDERED.

19      Dated:   February 4, 2026                    _____

20                                                    UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                    15